## Case No. 8,770.

### McDONALD v. WOODRUFF et al.

[2 Dill. 244.] [2]

Circuit Court, E. D. Arkansas. 1871.

LIBEL.—PLEADINGS — RESPONSIBILITY OF NEWSPAPER PUBLISHERS—MEASURE OF DAMAGES.

1. In an action for libel against the publishers of a newspaper, it is no justification that the article was copied from another paper, and that it showed this fact on its face.

2. Under the common law system of pleading, this fact may, when available, be used in mitigation of damages under the general issue.

[Cited in Upton v. Hume (Or.) 33 Pac. 813.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

16 FED. CAS.—4

3. One proprietor of a newspaper is responsible for the act of his co-proprietor in publishing a libelous article.

4. Libel defined—respective functions of court and jury in the trial of actions for libel—criticism of official conduct and public officers, extent and limitations upon the right—subsequent libelous articles—measure of damages.

[Cited in Erber v. Dun, 12 Fed. 531, 533.]

[This was an action of libel by McDonald against Woodruff and Blocker.]

W. G. Whipple, for plaintiff.

Garland & Nash, English, Gantt & English, and Watkins & Rose, for defendants.

PER CURIAM. In an action against the defendant as the publisher of a newspaper, for the publication of an article, libelous in its nature, concerning the plaintiff, a plea setting up that the article in question was first published in another designated newspaper, and that it was simply copied into the defendant's paper as an item of news, and that the article as copied showed that it was thus copied or taken from the other newspaper, is demurrable; these facts are available under the common law system of pleading, which prevails in this court, in mitigation of damages under the general issue, but in themselves are not pleadable in bar. Such is the weight of authority, and this view seems to us better supported by reason and principle than the opposite one. 2 Greenl. Ev. § 424, and cases cited; Romayne v. Duane [Case No. 12,028].

The cause was subsequently tried before DILLON, Circuit Judge, and CALDWELL, District Judge, and a jury. The plaintiff was the supervisor of internal revenue for the district embracing Missouri, Arkansas, and the Indian Territory. His official conduct in proceedings against tobacco manufacturers in the Indian country (see U. S. v. Tobacco Factory [Id. 16,528]; The Cherokee Tobacco, 11 Wall. [78 U. S.] 616) called forth an article stated to have been written by Col. Boudinot, reflecting severely upon the plaintiff. This article, first appearing in another newspaper published in or near the Indian country, was copied by the defendants into the Daily Arkansas Gazette, of which they were the proprietors. The article was of considerable length, but in it were expressions referring to the plaintiff as "a self-convicted liar," "a stupid ass," "he is in the pay of the St. Louis tobacco manufacturers." No plea of justification was filed, and on the trial no evidence was offered to show any fraudulent or corrupt official conduct on the part of the plaintiff. The evidence being in, and the argument concluded, the circuit judge, with the concurrence of the district judge, charged the jury, as follows:

DILLON, Circuit Judge. 1. This is an action of libel. The declaration contains two counts. The one charges the alleged libelous article was published by the defend-

ants of the plaintiff as a private citizen. The other charges that the same libel was published of the plaintiff in his public capacity as supervisor of internal revenue. The defendants plead not guilty. This makes it incumbent on the plaintiff to prove the publication as alleged by the defendants of the article or words alleged to be libelous; the fact that the article or words referred to the plaintiff; his official character, so far as damages are asked, in respect to his official character, and the defendants' alleged malicious intention in the publication of the article or publication complained of as libelous. If the defendants were the proprietors of the newspaper named in the declaration, called the Daily Arkansas Gazette, and if the article containing the words alleged in the declaration was published therein while the defendants were such proprietors, the allegation of the publication is established, and one of the proprietors of a paper is liable for what is done by the others in publishing libelous articles upon individuals.

2. If you find the fact of the publication by the defendants proved to your satisfaction by the evidence, you will next consider whether the article published related to the plaintiff, and is libelous in its character. At the present day the law in relation to libel is "that the judge is not bound to state to the jury, as a matter of law, whether the publication complained of, and sued for, is a libel or not; but the proper course is for him to define what is a libel in point of law, and leave it to the jury whether the publication falls within that definition, and as incidental to that, whether it is calculated to injure the reputation of the plaintiff." 2 Greenl. Ev. § 411.

Accordingly, it becomes the duty of the court to define what is, in law, a libel. This we do in the language of the supreme court of the United States: "Every publication in print, which charges upon or imputes to any person that which renders him liable to punishment, or is calculated to make him infamous, odious, or ridiculous, is a libel, and implies malice in the author or publisher. Proof of malice in such publications is not required of the plaintiff; justification, excuse, or extenuation, if either can be shown, must proceed from the defendant." [White v. Nicholls] 3 How. [44 U. S.] 291.

It is your duty to determine whether the publication sued for in this action falls within this definition. The plaintiff selects certain parts of the article, and charges it to be libelous. In determining whether the publication was or was not libelous, as above defined, you are to consider the whole publication—take it by the four corners and consider it in all its parts, in order to determine the meaning and purpose, character and effect of the particular words complained of.

3. Malice is essential to make a publication a libel; but in law, every publication which falls within the definition of libel above given, is, in law, presumptively malicious. Malice has, in law, a meaning not exactly the same in all respects with its common signification. Malice, in its common acceptation, means ill-will against a person; but in its legal sense, means a wrongful act done intentionally, or without just cause or excuse. Malice, in law, is not the same thing as malice in fact. Malice, in law, is implied from wrongful and unjustifiable acts, done on purpose or without just or legal excuse.

4. There is a wide difference between publications relating to public and private individuals. Every person and every newspaper may fairly criticise the action or official conduct of public men or public officers; so far there is no liability; but neither a person nor newspaper can make such comments or criticism a vehicle for malice or the indulgence of private spite; nor impute to public men or officers such conduct as disgraces or dishonors them; or make charges against them which have this effect, unless they are able to justify or prove them to be true, and made in good faith and for good ends.

5. If you find that the publication alleged in the declaration was made by the defendants as therein alleged, and that it was libelous in its character, as a libel is before defined, you will have occasion to consider the question of damages; and in its consideration your attention should be directed to all the circumstances of the case. Malice is essential to the action; but malice, as above explained, is of two kinds—legal or implied malice, and actual malice: that is, personal spite or ill-will. The amount of damages (if the plaintiff, in an action for libel, is entitled to recover) depends, where no special damage is shown (and evidence of no special damage has been produced in this case), upon the degree or intensity of the malice, legal or actual. You can derive no aid in assessing damages from the results of other cases, for it is quite impossible, in the nature of things, that any two actions for libel should be exactly alike.

The circumstances and the distinctive character of the case before you are to be considered. It must be evident to you, that if the defendants are liable at all, the amount of their liability is, or may be, very different from what it would have been if they had written the article instead of having copied it (as it is conceded they did) from another journal. Not that a newspaper, even in the way of news, can copy without liability an article that is libelous in its nature upon an individual or public officer, for this cannot be done. So, if an article, libelous in its character, is copied from another paper, there is a liability therefor, but such liability would be greater if it was published by the defendants from actual ill-will or actual malice toward the plaintiff, than if no such ill-will or actual malice existed. Whether there was any actual malice or ill-will is a question of

fact for you to decide from all the evidence and all the circumstances before you. Publishing a copied article, if libelous in its character, is not justifiable, but the fact that it is copied may be considered in mitigation of damages. If you find from all the circumstances that there was no malice on the part of the defendants towards the plaintiff, inducing or actuating the publication complained of, then you can give no damages on account of such malice; but if the publication was made, and is libelous, the law presumes malice, and the action cannot be defeated, and the legal malice thus presumed cannot be rebutted by evidence which negatives the existence of any malice in fact.

The court repeats: The amount of damages depends essentially upon the degree of malice, express or implied, but want of actual malice is no defence to an action for the publication of an article which is, in law, a libel. As the amount of damage depends upon the degree or intensity of the malice, you must consider what were the motives which actuated the defendants, or either of them, in the publication of the article and the circumstances under which the publication was made. To throw light upon this, the plaintiff has introduced certain other articles subsequently published by the defendants in their paper concerning him. You must understand that you can give no damages in this action on account of those subsequent publications. You can only consider them in connection with the inquiry as to the motives with which the publication sued for was made, and to show malice, or the degree thereof existing at the time the original article was published.

With these general rules to guide juries in assessing damages the law leaves the amount to their sound judgment, reasonably, fairly, and dispassionately exercised. This it does from necessity. If one man owes another so many dollars, or has taken from him so much property, or has broken a specific contract, there is something to measure (as the law expresses it) the amount of the damages or the recovery. But in an action of this kind the law is unable to furnish you with any definite rule to measure the damages. It confides it to the sound, temperate, deliberate, and reasonable exercise of your functions as jurymen. The law leaves the jury at liberty to find and return such damages as they think right and just, but this is not a wild, unrestrained, communal liberty, to be arbitrarily exercised, but the higher and better kind of liberty, viz: Liberty restrained by reason and moderated by justice.

The jury returned the following verdict: "We, the jury, find for the plaintiff, and assess the damage at one dollar."

As subsequent libels constitute distinct and substantive causes of actions, proof thereof cannot be admitted to affect the damages, but only as bearing on the question of malice: Beardsley v. Bridgman, 17 Iowa, 290, 1864.