## STEPHEN BRONSON v. VALORUS W. BRUCE.

*Newspaper libel—Publisher must defend on same legal ground as private individual—Publication, falsely imputing a crime to a candidate for office, not privileged, but actionable per se—Law imputes malice—Mitigation of damages—Good faith—Due investigation.*

1. The publisher of a newspaper possesses no immunity from liability in publishing a libel, other or different from any other person. The law makes no distinction between him and any private person who may publish an article in a newspaper or other printed form, and if either abuses the right to publish his sentiments on any subject and upon any occasion, he must defend himself upon the same legal ground.

2. A publication, in a newspaper, concerning a public officer or a candidate for an elective office, which *falsely* imputes to him a crime, is not privileged by the occasion, either absolutely or qualifiedly, but is actionable, *per se*, the law imputing malice to the publisher or author.

3. If the charges are made in an honest belief of their truth, after reasonable and proper investigation, such fact would go to mitigate the damages, and under certain circumstances—such as are alluded to in *Bailey v. Kalamazoo Publishing Co.* 40 Mich. 251-7—the jury would be warranted in reducing the damages to a minimum.

4. The reasonableness of such investigation is for the jury, under all the circumstances, from which they must decide whether the publication was made in good faith, and with an honest purpose to enlighten the public upon the character and fitness of the candidate for the position he sought.

Error to Mecosta. ·(Judkins, J.)    Argued November 19, 1885.   Decided February 3, 1886.

Case.   Plaintiff brings error.   Reversed.

The facts are stated in the opinion.

*Glidden & Marsh* and *Frank Dumon,* for appellant:

Whether or not the communication was privileged is a question of law for the court:   *Palmer v. Concord,* 48 N. H. 217.   While it may be the privilege and duty of the public press to comment upon and criticize, fairly, the qualifications of a candidate for office, it is equally its duty not to publish defamatory matter which the publisher does *not know* to be true:   2 Addison on Torts, 640, and it is not sufficient that such publisher makes such comments, *bona fide,* if made recklessly and without proper care to ascertain their truth: Ib.

False and calumnious publications, concerning candidates for office, are not privileged:   *Com. v. Odell,* 3 Pittsburgh. 449; 2 Addison on Torts, 952.

*Stone & Hyde,* for defendant:

The principle is a universal one, that the public convenience is to be preferred to private interests, and that communications which the interests of society require to be unfettered, may freely be made by persons acting honestly, without malice, notwithstanding they involve relevant comments condemnatory of individuals:   Starkie on Slander, 292; *White v. Nichols,* 3 How. 266; *State v. Burnham,* 9 N. H. 34; *O'Donaghue v. M'Govern,* 23 Wend. 26; *Crane v. Waters,* 10 Fed. Rep. 619; *Locke v. Bradstreet Co.* 22 Ib. 771; *Remington v. Congdon,* 2 Pick. 310; *Van Wyck v. Aspinwall,* 17 N. Y. 190; *Howard v. Thompson,* 21 Wend. 319; *Miner v. Post & Tribune,* 49 Mich. 358; *Palmer v. Concord,* 48 N. H. 211; *Wilson v. Fitch,* 41 Cal. 386.

Public criticism of the actions, character and motives of persons holding official positions, which are elective, made on lawful occasion and upon probable cause, are also, *prima facia,* privileged.   For example: Member of parliament: *Onslow v. Horne,* 3 Wils 177; member of congress: *Mayrant v. Richardson,* 1 N. and McC. 347; member of legislature:   *Hogg v. Dorrah,* 2 Port. (Ala.) 212; a judge: 2 J. J. Marsh, 540; attorney general: *Ried v. Delorme,* 2 Brev. (S. C.) 76; sheriff: *Larkin v. Noonan,* 19 Wis. 82; state

attorney: *Young v. Richardson*, 4 Ill. App. 364; city treasurer: *Marks v. Baker*, 28 Minn. 162; mayor: *Wallace v. Bazet*, 34 La. Ann. 131; police justice: *Miner v. Detroit Post & Tribune*, 49 Mich. 358; judge: *Briggs v. Garrett*, 18 Cent. L. J. 104; candidates for office, their character, actions and motives, may be publicly criticised, and although such criticism may contain false and injurious aspersions, it does not carry with it the presumption of malice: *Commonwealth v. Clapp*, 4 Mass. 169; *Hunter v. Sharp*, 4 F. and F. 983; *Risk Allah Bey v. Whitehurst*, 18 L. T. (U. S.) 615; Cooley Const. Lim. pp. 514, 515; *Marks v. Baker*, 28 Minn. 162; Kent's Commentaries, Vol. 2 p. 17; *Briggs v. Garrett*, 18 Cent. L. J. p. 111; *Mott v. Dawson*, 46 Ia. 533; *State v. Balch*, (Kansas) 2 Pacific Rep. 609; *Bays v. Hunt*, 60 Ia. 251.

CHAMPLIN, J. At the general election in the year 1882, the plaintiff was a candidate for congress.

The defendant was then editor and publisher of the *Big Rapids Current*, a newspaper published in the city of Big Rapids, in the county of Mecosta, and circulated in that and other counties in the congressional district which was sought to be represented in congress by the plaintiff, as well as in other counties of the State outside of said district.

The defendant, through the columns of his newspaper, opposed the election of the plaintiff to the office for which he was a candidate, and supported the election of the opposing candidate. After the plaintiff was placed in nomination for the office, and before the election to be held for representative in congress, the defendant published in his paper, and circulated throughout the district, and sent the same to exchanges in other parts of the State, certain articles concerning the plaintiff which the plaintiff claims to be libelous, and this action is brought to recover damages therefor.

The defendant pleaded the general issue, and gave notice,

(1) That he would prove that he was justified in so doing, for the reason that the alleged defamatory matter, and the several statements in the articles so published by defendant, were each true in substance and in fact as published; and

(2) That the same was a privileged communication, and statements therein were *bona fide* comments upon the acts

and statements of said plaintiff of the several matters referred to therein, and of the acts, statements, and conduct of the plaintiff in reference thereto, and of and concerning the plaintiff as a public man, and made for the public good, and were published as such comments without any malicious intent or motive whatever.

At the trial the publication was not disputed, neither can it be disputed, that the article is libelous if not true. It charged him with the crime of forgery; of the theft of deposits of poor men and women; and of cheating laboring men of their hard earnings.

Two questions are raised upon the charge of the court:

(1) Upon the correctness of his instructions relative to the privileged character of the publication; and

(2) Upon his instructions relative to the mitigation of damages.

The learned judge, after stating that privileged communications are of two kinds, and defining and illustrating what is absolute privilege, instructed the jury relative to qualified privilege as follows:

"There is another kind of privilege which is not absolute, but which is conditioned on the theory that there is no malice on the part of the person uttering the communication or publishing the libel. It is competent—it is justifiable—for the press to comment upon the character and standing—intellectually, morally, physically, and otherwise—of a man who offers himself as a candidate for office of trust. I say, it is competent to do that, depending, of course, upon the circumstances of the case and the surroundings.

When a man sees fit to take the stand before his constituency for a public position and public honors, he thereby, to a certain extent, makes himself public property, subjects himself to criticism by his constituency. And if it is made to appear that the criticism is just, is proper, is made in good faith, is made without malice and for the public good, for the purpose, as supposed by the person at the time, to prevent an incompetent and unfit and unsuitable person from receiving the majority of the votes of the electors of the district, or as the case may be, that article is *prima facie* privileged, and the law will require of the party who complains of the article to show that the same was published with bad motives, and not for good ends and purposes.  *  *  *

When that is shown, that privilege vanishes, and it is no longer a protection to the person apparently covered by it in the first instance.

In this case, gentlemen, it appears beyond dispute that, at the time of the publication of these articles, Mr. Bronson was a candidate on a fusion ticket for congress from this congressional district, and was then before the people for that purpose. These articles were published of and concerning him, reflecting upon his character and standing as a man, and his connection with the Exchange Bank, etc. And it is claimed by Mr. Bruce that he published these with good motives and for justifiable ends, and with no malice whatever. That is his claim. If that is true; if he had no malice, no disposition to specially injure this man, Mr. Bronson, but published the same in good faith, honestly believing that the occasion required it—then the communication is privileged, and the plaintiff cannot recover in this suit, even though the communications themselves were false; because if they were privileged by the occasion, that is a complete justification to the action. Right here is the starting point in the case: Were the articles privileged? They are *prima facie* privileged by the occasion, in my judgment, and I so charge you as matter of law. But it will be for you to determine whether this man Bruce, in the publication of the article, was actuated by private malice, or malice of any sort, at that time. If so, then that privilege ceased."

The constitution of this State provides that "no law shall ever be passed to restrain or abridge the liberty of speech or of the press; but every person may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of such right." Article 4, sec. 42.

The publisher of a newspaper, possesses no immunity from liability in publishing a libel, other or different than any other person. The law makes no distinction between the newspaper publisher, and any private person who may publish an article in a newspaper or other printed form; and if either abuses the right to publish his sentiments on any subject and upon any occasion, he must defend himself upon the same legal ground.

As was said by the supreme court of West Virginia in *Sweeney v. Baker*, 13 W. Va. 183:

" The fact that one is a candidate for office in the gift of the people affords, in many instances, a legal excuse for publishing language concerning him as such candidate for which publication there would be no legal excuse if he did not occupy the position of such candidate, whether the publication is made by the proprietors of a newspaper, or by a voter or other person having an interest in the election. The *conduct and actions* of such candidate may be freely commented upon, his *acts* may be canvassed, and his conduct boldly censured. Nor is it material that such criticism of *conduct* should, in the estimate of the jury, be just. The right to criticise the *action* or *conduct* of a candidate is a right, on the part of the party making the publication, to judge himself of the justness of the criticism. If he was liable for damages in an action for libel for a publication criticising the *conduct* or *action* of such a candidate, if a jury should hold his criticism unjust, his right of criticism would be a delusion—a mere trap. The only limitation to the right of criticism of the acts or conduct of a candidate for an office in the gift of the people, is, that the criticism be *bona fide.* As this right of criticism is confined to the *acts* or *conduct* of such candidate, whenever the facts which constitute the act or conduct criticised are not admitted, they must of course be proven. * * * His talents and qualification, mentally and physically, for the office he asks at the hands of the people may be freely commented on in publications in a newspaper, and, though such comments be harsh and unjust, no malice will be implied ; for these are matters of opinion of which the voters are the only judges ; but no one has a right by a publication to impute to such candidate, falsely, crimes, or publish allegations affecting his character falsely."

The authorities are numerous, and fully sustain the position, that a publication in a newspaper concerning either a public officer, or a candidate for an elective office, which falsely imputes to him a crime, is not privileged by the occasion, either absolutely or qualifiedly, but such publication is actionable *per se ;* the law imputing malice to the publisher or author : *Com. v. Clapp*, 4 Mass. 165 ; *Curtis v. Mussey*, 6 Gray 261 ; *Aldrich v. Press Printing Co.* 9 Minn. 133 (Gil. 123) ; *Seely v. Blair*, Wright (Ohio), 358, 683 ; *Root v. King*, 7 Cow. 613 ; *King v. Root*, 4 Wend. 113 ; *Rearick*

*v. Wilcox*, 81 Ill. 77, 81; *Com. v. Odell*, 3 Pittsb. 449, 459; *Brewer v. Weakley*, 2 Overt. 99.

It was said by Mr. Justice Campbell, in the case of *Detroit Daily Post v. McArthur*, 16 Mich. 451, that

"The law favors the freedom of the press so long as it does not interfere with private reputation, or other rights entitled to protection. And, inasmuch as the newspaper press is one of the necessities of civilization, the conditions under which it is required to be conducted should not be unreasonable or vexatious." And, again: "Where the wrong done consists in a libel, which can never be accidental, the publishing is therefore always imputed to a wrong motive, and that motive is called malicious."

In *Whittemore v. Weiss*, 33 Mich. 353, Chief Justice Cooley said:

"The judge charged the jury that malice is to be presumed from the publication and its falsity; that, to rebut this presumption, defendants must prove that they made the publication in good faith, believing it to be true in all its essential parts, and for a proper purpose. Defendants insist that the purpose is immaterial if they believed what they published, and made the publication in good faith. This might be so if the publication had been true; but good faith cannot protect a false publication; nor can one excuse himself for making a mistaken assault upon his neighbor's reputation, by showing the absence of malice, when, even had his charge been true, there was no purpose in bringing the matter to public notice. If one makes an attack which the occasion does not justify, there is no injustice in requiring him to show the truth."

In *Bailey v. Kalamazoo Publishing Co.* 54 Mich. 251, 257, Chief Justice Campbell said:

"The public are interested in knowing the character of candidates for congress; and while no man can lawfully destroy the reputation of a candidate by falsehood, yet if an honest mistake is made, in an honest attempt to enlighten the public, it must reduce the damages to the minimum if the fault itself is not serious, and there should be no unreasonable responsibility when there is no actual malice."

In *Peoples v. Detroit Post & Tribune Co.* 54 Mich. 457, 462, Mr. Justice Sherwood said:

"There can be no question, at this late day, but that the public newspaper has the right (whether it shall be regarded as its duty or not) to discuss those matters which relate to the life, habits, comfort, happiness and welfare of the people. In doing so it may state facts, draw its own inferences, and give its own views upon the facts. It may err in its deductions, and if they are false they are not actionable unless special damages are shown; but false assertions, when they impute the commission of a crime, are actionable, and when not based upon any facts, legally tending to prove the facts imputed, the publication cannot be said to be privileged."

These excerpts, from the decisions of this Court, show that they are in harmony with the authorities cited from other courts. The electors of a congressional district are interested in knowing the *truth*, not falsehoods, concerning the qualifications and character of one who offers to represent them in congress; and it is the right and privilege of any elector, or person also having an interest to be represented, to freely criticise the act and conduct of such candidate, and show, if he can, why such person is unfit to be intrusted with the office, or why the suffrages of the electors should not be cast for him. But defamation is not a necessary and indispensable concomitant of an election contest. "Slander," says Judge Overton, "is no more justifiable when spoken of a man with a view to his election than on any other occasion. Unhappy, indeed, would be any people when, in the exercise of one right, you destroy as important a one. Let his talents, his virtues, and such vices as are likely to affect his public character, be freely discussed, but no falsehoods be propagated." To hold that false charges of a defamatory character, made against a candidate, are privileged as matters of law, if made in good faith, and that the party making them is absolutely shielded against liability, it seems to me is a most pernicious doctrine. It would deter all sensitive and honorable men from accepting the candidacy to office, and leave the field to the profligate, the unprincipled, and unworthy; to men who have no character to lose, no reputation to blemish. It could scarcely be expected that any man, worthy of the position, would consent to stand for an office,

and have his reputation tarnished, his good name scandalized in the face of the whole community, if such doctrine as this is to prevail. Besides, under the guise of assisting the people to select a fit man, the voters are deceived by falsehood and induced to withhold their support from the maligned candidate, and so two wrongs are perpetrated : one upon the candidate, the other in misleading the voter. Under such a rule the advocates of both, or all candidates, would let fly their poisoned shafts of defamation, and charges, to be met with counter-charges, until the bewildered voters, not knowing who or what to believe, must of necessity shut their eyes to the fitness and character of the candidate, and join the ranks of the party whose banner bears the inscription, " Principles, not Men."

In a representative form of government, the public morals and the administration of public affairs cannot rise to a higher plane than the character of those who are elected, as representatives, or to fill the offices. If public virtue is to prevail, and distinguish the execution of high public trusts, candidates for those positions must be men of virtue, as well as men of character and capability; and the stability of our institutions, in a great measure, depends upon the confidence and esteem in which those occupying such high positions are held by their fellow-citizens. This cannot be attained if charges of crime against them, which are falsely made or circulated in the community, are absolutely privileged, though made in good faith. I think the circuit judge erred in laying down such rule. If the charges were false, and made in an honest belief of their truth, after reasonable and proper investigation, such fact would go to mitigate the damages, and, under certain circumstances, such as are alluded to in *Bailey v. Kalamazoo Publishing Co.*, the jury would be warranted in reducing the damages to a minimum.

In the case under consideration, the parties were both residents of the city of Big Rapids, and they had resided there over ten years. It would seem an easy matter for the defendant to have informed himself of the truth of the statement of facts made in the article published. He testifies that he

had no personal ill will against the plaintiff, and knew him very well. It seems reasonable, not as asking too much, for him, in the course of his investigation, to have called upon the plaintiff and requested a statement as to the truth of the charges he had heard and was about to repeat. The reasonableness of his investigation, however, was for the jury, under all the circumstances, from which they were to deduce the fact whether the publication was made in good faith, and with an honest purpose to enlighten the public upon the character and fitness of the plaintiff for the position he sought. The article claims to state facts, and those facts charged the plaintiff with a crime, and I think the defendant cannot excuse himself from liability, without proving the truth of such charges.

The fact that the article was copied from a paper published in an adjoining county, and accredited to that paper, was received in mitigation of damages. This is the law in case of verbal slander, but the rule does not necessarily always obtain in cases of libel. It must depend upon the circumstances of the particular case.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.