[Argued June 26, 1893; decided July 17, 1893.]

## UPTON v. HUME.

[S. C. 33 Pac. Rep. 810; 21 L. R. A. 493.]

1. LIBEL—CANDIDATE FOR OFFICE *—MALICE—PRIVILEGE.— The fitness and qualification of a candidate for a public office may be subjected to the closest scrutiny and investigation, and charges affecting the fitness of such a candidate will not be actionable without proof of express malice; but when a crime is falsely imputed to a candidate, the utterance is actionable *per se,* the law implying malice. Such charges are in no respect privileged, and can be justified only by proof of their truth.

2. LIBEL—PRIVILEGE OF NEWSPAPER PUBLISHERS *— FREEDOM OF THE PRESS. — The idea that the "freedom of the press," guaranteed by the constitu-

---

* NOTE.— In connection with the above presentation of the law regarding newspaper libels of candidates for public office, see *Belknap* v. *Ball,* 83 Mich. 583 (S. C. with notes, 11 L. R. A. 72 and 21 Am. St. Rep. 622), and also a very scholarly article on the general subject of Newspaper Libel attached to the case of *McAllister* v. *Detroit Free Press Co.* 15 Am. St. Rep. 333 (S. C. 76 Mich. 338).— REPORTER.

tion, gives newspaper proprietors a privilege to publish with impunity charges for which others would be held responsible, is a very erroneous one; such persons have no more immunity from liability for libelous publications than other citizens. The publisher of a false and defamatory charge must always answer in damages to the injured party.

3. Justification of Libel—Mitigation of Damages.—The fact that a defamatory publication was copied from another newspaper in the honest belief that it was true is not a justification, although it may go in mitigation of damages.

4. Libel—Evidence of Other Charges—Malice—Damages.—In an action for libel, actionable words spoken or published on other occasions than the one charged, can be given in evidence as tending to show express malice and to enhance the damages, when they impute the same crime, or are a renewal of the original charge, but not otherwise.

5. Failure to Prove Truth of Libelous Charge—Justification—Malice—Code, § 91.—The fact that a defendant in a libel action has failed to prove his plea of the truth of the charge, is not necessarily to be considered as evidence of malice and in aggravation of damages; it is for the jury to decide from all the evidence, and from the spirit of the defense, whether the plea was an honest one, or was simply an excuse to repeat the original charge.

Curry County: J. C. Fullerton, Judge.

The plaintiff J. H. Upton sued R. D. Hume upon a charge of libel, in publishing in the Gold Beach Gazette, a newspaper owned and published by him, and circulated in the counties of Coos and Curry, in this state, certain articles concerning the plaintiff, containing, among other things, the following language, alleged to be false and defamatory: "He [meaning the plaintiff] has already acquired the reputation of being a loathsome, venomous thing, without shame; a man without a spark of manhood, a betrayer of his party, a citizen whose word is not worth a straw, a vile and cowardly slanderer, an infamous scoundrel, and a perjured villian." "No, sir; you [meaning the plaintiff] did this simply for personal feeling and spite. You did so because Captain Tichenor had publicly called you, to your face, a perjurer and a thief." "This, sir, was the worst of perjury, for by this, your false swearing; you deceived the court, and was the cause of granting

a divorce illegally. Deny this if you dare. The proof can be produced with little effort. We could recount many more of your ways that are dark, J. H. Upton, but we think the above will suffice for the present."

The defendant by his answer admits the publication, but pleads (1) the truth in justification; and, (2) as a matter of inducement, explanation, and justification, that at the time of the publication the plaintiff was a candidate for the office of joint representative for Coos and Curry Counties in the legislature, and that the articles complained of were only a re-publication of unretracted charges published in 1884, by one Walter Sutton, who, at the time of the publication complained of, was publishing a paper called the Port Orford Tribune, and advocating therein the election of plaintiff, and abusing the defendant who was supporting and advocating the election of plaintiff's opponent; that when said articles were published by defendant, he had sufficient cause to believe, and did believe, that the charges therein contained were true, and that the plaintiff was an unfit person for the position to which he aspired, and so believing, published the same in good faith, and without malice against the plaintiff, but for the sole purpose of advising the voters of Coos and Curry Counties as to the true character of plaintiff, and the inconsistency of Sutton. The trial resulted in a verdict and judgment in favor of plaintiff for the sum of five hundred dollars, from which the defendant appeals, assigning error in the admission of testimony and in giving and refusing certain instructions. Reversed.

*S. H. Hazard,* for Appellant.

1. Defendant's motion for a nonsuit should have been sustained, for the reason therein stated. The admissions made by the pleadings show that the occasion justified the publication as made, unless the plaintiff introduced evidence showing, or tending to show, express malice on the

part of the defendant in the making of the publication. And we insist the evidence offered by plaintiff entirely fails to show any malice on the part of appellant, but on the contrary that the defendant had sufficient reason to believe, and did believe, that the matter published by him was true. As respects publications concerning candidates for office, the same rules apply to them as to communications made concerning candidates for employment generally, or as applied to those who in a measure challenge criticism by appearing as authors, actors, or in fact any role which appeals to the public and gives occasion for criticism: Townshend on Slander and Libel, §§ 247, 245, 254; *Briggs* v. *Garrett,* 111 Penn. St. 404 (56 Am. Rep. 274); *Neeb* v. *Hope,* 111 Penn. St. 145; *State* v. *Balch,* 31 Kan. 465 (2 Pac. Rep. 609); *Mott* v. *Dawson,* 46 Iowa, 533; *Bays* v. *Hunt,* 60 Iowa, 251 (14 N. W. Rep. 785); *Miner* v. *Post and Tribune Co.* 49 Mich. 358 (13 N. W. Rep. 773); *Crane* v. *Waters,* 10 Fed. Rep. 619; *Lewis* v. *Chapman,* 16 N. Y. 369; *Van Wyck* v. *Aspinwall,* 17 N. Y. 190; *Klinck* v. *Colby,* 46 N. Y. 427 (7 Am. Rep. 360); *Marks* v. *Baker,* 28 Minn. 162 (9 N. W. Rep. 678); *Palmer* v. *Concord,* 48 N. H. 211 (97 Am. Dec. 605); *Kent* v. *Bongartz,* 15 R. I. 72 (2 Am. St. Rep. 870); Cooley on Torts, 210, 217; 3 Lawson's Rights, Remedies, and Practice, §§ 1290, 1296; *Fresh* v. *Cutter,* 25 Am. St. 575 (73 Maryland, 87; 10 L. R. A. 67); *Rotholz* v. *Dunkle,* 26 Am. St. 432 (52 N. J. L. 438; 13 L. R. A. 655); *Gardemal* v. *McWilliams,* 26 Am. St. 195 (43 La. Ann. 454); *Rude* v. *Nass,* 24 Am. St. 717 (79 Wis. 321); *Fowles* v. *Bowen,* 30 N. Y. 20; *Byan* v. *Collins,* 7 Am. St. 726 and note (111 N. Y. 143; 2 L. R. A. 129); *Chaffin* v. *Lynch,* 6 S. E. Rep. 474 (84 Va. 884); *Chaffin* v. *Lynch* (Va.), 1 S. E. Rep. 803; *Wieman* v. *Mabee,* 8 N. W. Rep. 71 (45 Mich. 484; 40 Am. Rep. 477); *Edwards* v. *Chandler,* 14 Mich. 471 (90 Am. Dec. 249); *Missouri Pac. Ry. Co.* v. *Richmond,* 15 Am. St. 794 (73 Tex. 568; 4 L. R. A. 280).

To recover in an action of libel where the communi-

cation is privileged, the plaintiff must prove affirmatively not only the falsehood of the communication, but that it was published with express malice: *Edwards* v. *Chandler*, 90 Am. Dec. 249 (14 Mich. 471); *Lewis* v. *Chapman*, 16 N. Y. 369; Townshend on Slander and Libel, §§ 392, 209; Newal on Defamation, § 23; *Fresh* v. *Cutter*, 25 Am. St. 575 (72 Md, 87; 10 L. R. A. 67); *Gardemal* v. *McWilliams*, 26 Am. St. 195 (43 La. Ann. 454); *Gott* v. *Pulsifer*, 122 Mass. 235 (23 Am. Rep. 322); *Chaffin* v. *Lynch*, 6 S. E. Rep. 475; *Wieman* v. *Mabee*, 8 N. W. Rep. 71 (45 Mich. 484).

Justification from occasion, in action of slander, arises when an actionable communication is made *bona fide* upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, legal, moral, or social, if made to a party having a corresponding interest or duty: *Fresh* v. *Cutter*, 25 Am. St. 575 (10 L. R. A. 67); *Rotholz* v. *Dunkle*, 26 Am. St. 432 (53 N. J. L. 438; 13 L. R. A. 655); *Byan* v. *Collins*, 7 Am. St. 726 and note (111 N. Y. 143; 2 L. R. A. 129); 3 Lawson's Rights, Remedies, and Practice, § 1296; *Van Wick* v. *Aspinwall*, 17 N. Y. 190.

If the jury believed from the evidence that the defendant had sufficient reason to believe, and did believe, that the matter published by him was true, and so believing published the same only because he believed it his duty so to do, those facts would be conclusive evidence that the defendant was not actuated by actual malice, even if there was no question of privilege in the case: Townshend on Slander and Libel, § 409; *Edwards* v. *Kansas City Times*, 32 Fed. Rep. 813; *Fresh* v. *Cutter*, 25 Am. St. 575 (10 L. R. A. 67); *Rude* v. *Nass*, 24 Am. Dec. 717; *Gott* v. *Pulsifer*, 122 Mass. 239; *Crane* v. *Waters*, 10 Fed. Rep. 619.

2.   The court instructed the jury that the fact that the articles republished by defendant had been formerly published as in answer alleged, was no defense to the action,

and entirely failed to instruct the jury, that the same might be considered by them in mitigation of damages, and as tending to show that defendant believed the publication to be true, which was clearly error:   *Davis* v. *Sladden,* 17 Or. 267, and cases cited.

3.   We insist that the better opinion is, that evidence of a charge of a different nature, and at a different time from that alleged in the complaint, is inadmissible to prove malice, or for any purpose:   *Howard* v. *Sexton,* 4 N. Y. 157; *Frazier* v. *McCloskey,* 60 N. Y. 337 (19 Am. Rep. 193); *Distin* v. *Rose,* 69 N. Y. 123; *Root* v. *Lowndes,* 6 Hill, 518 (41 Am. Dec. 762); Townshend, Slander and Libel, § 392, p. 654; *Philadelphia W. & B. R. Co.* v. *Quigley,* 62 U. S. (21 How. 202; 16 L. Ed. 73); *Keenholts* v. *Becker,* 3 Denio, 349; *Campbell* v. *Butts,* 3 N. Y. 173; *Bodwell* v. *Swan,* 3 Pick. 376; *Leonard* v. *Pope,* 27 Mich. 145.

4.   Under the code the defendant may allege in his answer the truth of the charge in justification, and also facts tending to prove its truth in mitigation of damages, and although the evidence fails to prove the justification, he is entitled to have it submitted to the jury in mitigation of damages:   Hill's Code, § 91; *Bisby* v. *Shaw,* 12 N. Y. 67; *Willover* v. *Hill,* 72 N. Y. 36; Bliss on Code Pleading (2d Ed.), §§ 359, 360.

When the defendant has plead the truth of the charge as a defense, and also matter in mitigation of damages showing, or tending to show, that defendant honestly believed the charge to be true, and that the defense was made in good faith, the mere fact that on the trial the defendant failed to prove that the charge made by him was true, is not, in itself, evidence of malice, and an instruction that it is, is clearly erroneous.   It should be left to the jury to determine from the whole evidence, whether the defense was interposed in good faith, under the honest belief that it was true; or whether it was made in bad faith.   In the former case it would not be evidence of

malice, and in the latter it would: Bliss on Code Plead-
ing, § 360; *Klinck* v. *Colby*, 46 N. Y. 427 (7 Am. Rep. 360;
*Bisbey* v. *Shaw*, 12 N. Y. 67; *Distin* v. *Rose*, 69 N. Y. 122;
Townshend on Slander and Libel, § 400; *Spooner* v. *Keeler*,
51 N. Y. 527; *Farmum* v. *Childs*, 66 Ill. 544; *Chamberlin* v.
*Vance*, 51 Cal. 79; *Proctor* v. *Houghtaling*, 37 Mich. 41;
*Rawsone* v. *Christian*, 49 Ga. 491; *Duval* v. *Davey*, 32 Ohio
St. 604; 13 Am. and Eng. Enc. 401.

*William M. Kaiser* orally argued the case, and *J. M.
Siglin* presented the following brief, for Respondent:—

1. A publication of and concerning a candidate for a
public office, if it imputes crime, is libelous unless true.
It is not a privileged communication: *Aldrich* v. *Press
Printing Co.* 9 Minn 133 (86 Am. Dec. 84); *Com.* v. *Clap*,
4 Mass. 163 (3 Am. Dec. 212); *Seely* v. *Blair*, Wright
(Ohio) 358; *Com.* v. *Wardwell*, 136 Mass. 164; *Sweeney* v.
*Baker*, 13 W. Va. 158 (31 Am. Rep. 757); *Hamilton* v. *Eno*,
81 N. Y. 116; *Usher* v. *Severance*, 20 Me. 9 (37 Am. Dec. 33);
*Snyder* v. *Fulton*, 34 Md. 128 (6 Am. Rep. 314); *Cooper* v.
*Stone*, 24 Wend. 434; *Feid* v. *McLendon*, 44 Ga. 156; *Smith*
v. *Tribune Co.* 4 Biss. 477.

The editors of newspapers have no greater privilege in
this respect than other persons, and when they publish
that which is false and libelous, they are amenable there-
for, whether their motives are good or bad: *Snyder* v.
*Fulton*, 34 Md. 128 (6 Am. Rep. 314).

Belief in libelous matter concerning candidates is no
justification: *Aldrich* v. *Press Printing Co.* 9 Minn. 133
(86 Am. Dec. 84); *King* v. *Root*, 4 Wend. 113 (21 Am.
Dec. 102); *Com.* v. *Clap*, 4 Mass. 136 (3 Am. Dec. 212).

2. If the matter is false and defamatory, the fact that
it had been before published in a newspaper in this
county, and that it is copies of articles published and cir-
culated by defendant, is not a defense to this action:
*Davis* v. *Sladden*, 17 Or. 259; *Kenney* v. *McLaughlin*, 5

Gray, 3 (66 Am. Dec. 345); *Fowler* v. *Chichestert,* 26 Ohio St. 9; *Stevens* v. *Hartwell,* 11 Met. 542; *Inman* v. *Foster,* 8 Wend. 602; *Sans* v. *Joerris,* 14 Wis. 633; *State* v. *Butman,* 15 La. Ann. 166; *Evans v. Smith,* 5 T. B. Mon. 364 (17 Am. Dec. 74); *Fitzgerald* v. *Stewart,* 53 Pa. 343; *Wolcott* v. *Hall,* 6 Mass. 513; *Alderman* v. *French,* 1 Pick. 1; *Bodwell* v. *Swan,* 3 Pick. 376; *Matson* v. *Buck,* 5 Cow. 499; *Root* v. *King,* 7 Cow. 613; *Cole* v. *Perry,* 8 Cow. 214; *Mapes* v. *Weeks,* 4 Wend. 659; *Shehan* v. *Collins.* 20 Ill. 325; *Dame Kenney,* 25 N. H. 318; *Smith* v. *Buckecker,* 4 Rawle, 295; *Freeman* v. *Price,* 2 Bail. L. 115; Townshend, Slander and Libel, §§ 114, 210, also note 3; *McDonald* v. *Woodruff,* 2 Dill. 244: *Hotchkiss* v. *Oliphant,* 2 Hill, 510; *Curtis* v. *Mussey,* 6 Gray, 261; *Cade* v. *Redditt,* 15 La. Ann. 492; *Treat* v. *Browning,* 4 Conn. 408, 10 Am. Dec. 156; *Clarkson* v. *McCarty,* 5 Blackf. 574.

3. Evidence that after the election defendant repeated the charge of perjury and larceny verbally against plaintiff was admissible for the purpose of proving the malice of defendant toward plaintiff: Field, Damages, 694; *Hosley* v. *Brooks,* 20 Ill. 115 (71 Am. Dec. 252); *Peltier* v. *Mict,* 50 Ill. 517; *Lewis* v. *Chapman,* 19 Barb. 252; *Humphries* v. *Parker,* 52 Me. 502; *Harbison* v. *Shook,* 41 Ill. 142 (13 Am. and Eng. Enc. Law, 490, par. 8, and authorities there cited; *Com.* v. *Damon,* 136 Mass. 448.

4. Slanderous matter set up in answer, if not sustained, may be considered in aggravation of damages: *Shartle* v. *Hutchinson,* 3 Or. 337; *Gilman* v. *Lowell,* 8 Wend. 573 (24 Am. Dec. 96); *King* v. *Root,* 4 Wend. 113 (21 Am. Dec. 102).

The attempt to justify if unsuccessful will aggravate damages. Strict proof must be given that the whole charge made is true in every particular: *Collier* v. *Simpson,* 5 Car. & P. 73; *Klewin* v. *Bauman,* 53 Wis. 245; *Fero* v. *Ruscoe,* 4 N. Y. 162; *Bennett* v. *Matthews,* 64 Barb. 411; *Henderson* v. *Fox,* 83 Ga. 233; *Smith* v. *Wyman,* 15 Me. 13;

*Distin* v. *Rose*, 69 N. Y. 122; *Pink* v. *Catanich*, 51 Cal. 420; *Wilson* v. *Robinson*, 14 L. J. Q. B. 196 (9 Jur. 726); *Lea* v. *Robertson*, (Ala.), 1 Stew. 138; *Richardson* v. *Robertson*, 23 Ga. 215; *Pool* v. *Devers*, 30 Ala. 672; *Gorman* v. *Sutton*, 32 Pa. 247; *Updegrove* v. *Zimmerman*, 13 Pa. 619; *Doss* v. *Jones*, (Miss.), 5 How. 158; *Freeman* v. *Fursley*, 50 Ill. 497; *Robinson* v. *Drummond*, 24 Ala. 174; *Spencer* v. *McMasters*, 16 Ill. 405.

MR. JUSTICE BEAN delivered the opinion of the court:

1. Before considering the other assignments of error, we wish to advert to the question raised by the motion for a nonsuit, and by certain instructions given and refused by the trial court, and that is whether the publication complained of was *prima facie* privileged by the occasion, and whether this action can be maintained by plaintiff without proof of express malice. The general rule is that in the case of a libelous publication the law implies malice, and infers some damages, if the publication is false, but to this rule there are certain exceptions in what are known as "privileged communications." Such communications are usually divided into several classes, with only one of which we are concerned at this time, and that is, generally stated, thus: "A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminating matter, which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." The rule was thus stated in *Harrison* v. *Bush*, 5 El. & Bl. 344, and has been generally approved by judges and text writers. Within this rule it is held that it is not only the privilege, but the duty, of the public press to discuss before the electors the fitness and qualification of candidates for pub-

lic office conferred by the election of the people; and when
a man becomes such a candidate, he must be considered
as putting his character in issue so far as respects his fit-
ness and qualification for the office, and that every person
who engages in the discussion, whether in private conver-
sation, in public speech, or in the newspapers, may, while
keeping within proper limits and acting in good faith, be
regarded and protected as one engaged in the discharge of
a duty.    But it is not believed that this rule can be
legitimately carried to the extent of justifying a publica-
tion which imputes to a candidate for office the commis-
sion of a crime, merely because he is seeking office.   "The
authorities fully sustain the position," says GREEN, Pres.,
in an able opinion on the subject, "that a publication in a
newspaper, made either of a public officer or a candidate
seeking an elective office from the votes of the people,
which imputes to him a crime or moral delinquency, is
not a privileged communication, either absolute or con-
ditional; but such publication is *per se* actionable, the law
imputing malice to the author or publisher": *Sweeney* v.
*Baker*, 13 W. Va. 158 (31 Am. Rep. 757).   And in *Seely* v.
*Blair*, Wright (Ohio), 686, it was said by WRIGHT, J.:
"As to the point urged, that the plaintiff was a candidate
for office, and the defendant an elector, I need only say the
relation of the parties to each other, or to the public, con-
fers upon the defendant no right to utter falsehood and
calumny.   An elector may freely canvass the character
and pretensions of officers and candidates, but he has no
right to calumniate one who is a candidate for office with
impunity.   If the law sanctioned such a course, it would
drive good men from the administration of public affairs,
and throw our government into the hands of the worthless
and profligate."

So also in *Bronson* v. *Bruce*, 59 Mich. 474 (60 Am. Rep.
307, 26 N. W. 671), Mr. Justice CHAMPLIN says:   "The
electors of a congressional district are interested in know-

ing the truth, not falsehoods, concerning the qualifications
and character of one who offers to represent them in con-
gress; and it is the right and privilege of any elector or
person also having an interest to be represented, to freely
criticise the acts and conduct of such candidate, and show,
if he can, why such person is unfit to be entrusted with
the office, or why the suffrages of the electors should not
be cast for him. But defamation is not a necessary and
indispensable concomitant of an election contest. 'Slan-
der,' says Judge OVERTON, 'is no more justifiable when
spoken of a man with a view to his election than on any
other occasion. Unhappy, indeed, would be any people,
when, in the exercise of one right, you destroy as impor-
tant a one. Let his talents, his virtues, and such vices as
are likely to affect his public character, be freely discussed,
but no falsehoods be propagated.' To hold that false
charges of a defamatory character, made against a candi-
date, are privileged as matters of law, if made in good
faith, and that the party making them is absolutely
shielded against liability, it seems to me is a most perni-
cious doctrine. It would deter all sensitive and honorable
men from accepting the candidacy to office, and leave the
field to the profligate, the unprincipled, and unworthy; to
men who have no character to lose, no reputation to blem-
ish. It could scarcely be expected that any man worthy
of the position would consent to stand for an office, and
have his reputation tarnished, his good name scandalized
in the face of the whole community, if such doctrine as
this is to prevail. Besides, under the guise of assisting
the people to select a fit man, the voters are deceived by
falsehood, and induced to withhold their support from the
maligned candidate, and so two wrongs are perpetrated,
one upon the candidate, the other in misleading the voter.
Under such a rule, the advocates of both or all candidates,
would let fly their poisoned shafts of defamation, and
charges, to be met with countercharges, until the bewil-

dered voters, not knowing who or what to believe, must of necessity shut their eyes to the fitness and character of the candidates, and join the ranks of the party whose banner bears the inscription, 'Principles, not Men.'"

The rule we gather from the authorities is that the fitness and qualification of a candidate for an elective office may be a subject for the freest scrutiny and investigation, either by the proprietor of a newspaper, or. by a voter or other person having an interest in the matter, and that. much latitude must be allowed in the publication, for the information of voters, of charges affecting the fitness of a candidate for the place he seeks, so long as it is done honestly and without malice. Nor will such publication be actionable without proof of express malice, although it may be harsh, unjust, and unnecessarily severe, for these are matters of opinion of which the party making the publication has a right to judge for himself. In the case of such a publication the occasion rebuts the inference of malice which the law would otherwise raise from its falsity, and no right of action exists, even though the character of the party has suffered, unless he is able to show the existence of actual malice. But when the publication attacks the private character of a candidate by falsely imputing to him a crime, it is not privileged by the occasion, either absolutely or qualifiedly, but is actionable *per se*, the law implying malice; and it is no justification that the publication was made with an honest belief in its truth, in good faith, and for the purpose of influencing voters. Such publications can be justified only by proof of their truth: *Commonwealth* v. *Clapp*, 4 Mass. 163 (3 Am. Dec. 212); *Curtis* v. *Mussey*, 6 Gray, 261; *Aldrich* v. *Press Printing Co.* 9 Minn. 133 (86 Am. Dec. 84); *Root* v. *King*, 7 Cow. 613; *King* v. *Root*, 4 Wend. 113 (21 Am. Dec. 102); *Hamilton* v. *Eno*, 81 N. Y. 116; *Commonwealth* v. *Wardwell*, 136 Mass. 164; *Barr* v. *Moore*, 87 Pa. St. 385 (30 Am. Rep. 367); *Seeley* v. *Blair*, Wright (Ohio), 358.

If it can be said that the cases of *Bays* v. *Hunt,* 60 Iowa, 251 (14 N. W. 785), *Mott* v. *Dawson,* 46 Iowa, 533, and *State* v. *Balch,* 31 Kan. 465 (2 Pac. 609), when read in the light of the facts, announce a contrary doctrine, they do not seem to us to be supported either by reason or the weight of authority. To permit a defendant who has published of a candidate false and defamatory statements concerning his private acts and character, on being pursued in the courts for this grievous wrong, to say in justification that he was actuated by no ill will or malice toward the plaintiff, but his motives were pure and his conduct actuated only by a desire for the public good, would abandon candidates to all the fierce tempests of defamation which either personal spite or political interest may suggest. The only safe evidence of a man's intentions are his acts, and if he accuses another of a crime, he must conclusively be presumed to have intended to injure him. Let the acts, conduct, and public record of a candidate, so far as it may affect his fitness or qualification for office, be the subject of free and vigorous comment, so long as it is done in good faith; but when his private life is assailed by imputing to him a crime, let his accuser either answer in damages, or prove the truth of the charge.

2. The term "freedom of the press," which is guaranteed under the constitution, has lead some to suppose that the proprietors of newspapers have a right to publish with impunity charges for which others would be held responsible. This is a mistake; the publisher of a newspaper possesses no immunity from liability on account of a libelous publication, not belonging to any other citizen. In either case the publisher is subject to the law of the land, and, when the publication is false and defamatory, he must answer in damages to the injured party: *Barnes* v. *Campbell,* 59 N. H. 128 (47 Am. Rep. 183); *Mallory* v *Pioneer-Press Co.* 34 Minn. 521 (26 N. W. 904); *Detroit Daily Post* v. *McArthur,* 16 Mich. 452; *Scheckell* v. *Jackson,*

10 Cush. 25. As was said by COLERIDGE, J., in *Davison* v. *Duncan,* 7 El. & Bl. 231, 90 Eng. Com. Law, "There is no difference in law whether the publication is by the proprietor of a newspaper or by some one else. There is no legal duty on either to publish what is injurious to another, and if any person does so, he must defend himself on some legal ground." Judge DRUMMOND says: "We all desire the entire freedom of the press, but it has never been understood as authorizing the bringing of charges against a man of his having committed a crime unless those charges were true. Now, there is nothing in this plea to indicate that these charges were true, but only that they had reason to believe that there was something in them, and that they were made in good faith and for honest purposes by them as the conductors of a public journal. That will not do. It would be tolerating charges in the public press against individuals simply under color of what was claimed to be a criticism. It may be said here that the motive was an honest one, but I hardly think that with an honest motive a journalist has a right to proclaim to the world that a particular individual is a thief or a murderer, or that he has committed any other crime in the catalogue of crimes. The only thing that can justify that is that it is true. Under our law, if it is true, he can make it. All public men, if this were the rule, would be at the mercy of every journalist, and they could launch charges against such a man with entire impunity. I do not feel inclined to adopt any rule which would allow such a license": *Smith* v. *Tribune Co.* 4 Biss. 477.

3. The publication complained of in the case under consideration imputed to the plaintiff a crime of the most infamous character,—that of being a "perjured villian," and by his false swearing deceiving the court,—and, under the law, was not privileged either actually or conditionally, although the plaintiff was at the time a candidate for an elective office. Nor does the admitted fact that it was but

XXIV. OR.— 28.

a re-publication of what Sutton had previously published
amount to a justification, even if done in the utmost good
faith, and with an honest belief in its truth, and for the
purpose of informing the voters. A newspaper cannot
copy, without liability, even in the way of news, a libelous
from another paper: *Davis* v. *Sladden,* 17 Or. 259 (21 Pac.
140). But the fact that it was so copied may, and should
be, considered, together with all the other circumstances
of the publication, when properly pleaded, in determin-
ing the good faith of the defendant, and as tending to
show want of actual malice, and thus go in mitigation of
damages: *McDonald* v. *Woodruff,* 2 Dill. 244; *Hinkle* v.
*Davenport,* 38 Iowa, 355; *Hewitt* v. *Pioneer-Press Co.* 23
Minn. 178 (23 Am. Rep. 680). We are of the opinion,
therefore, that no error was committed by the trial court
in overruling the motion for a nonsuit, or in instructing
the jury that malice was implied from the publication,
and that the previous publication by Sutton was no
defense.

4. The next assignment of error is in the admission,
for the purpose of showing malice in fact, of proof that
after the publication complained of, and before the com-
mencement of this action, the defendant, in the presence
of divers persons said, that "the men that voted for that
old forger Upton were thieves, robbers, and sons-of-bitches."
If these words can be considered as making any charge
against the plaintiff, it is that of forgery, and, as no such
charge is alleged in the complaint, the only question
presented by the exception is whether in an action for
libel, evidence of a charge of a different nature, and at a
different time, from that alleged in the complaint, can be
given for the purpose of showing malice, or the animus of
the defendant in the publication complained of. Upon
this question the authorities are in conflict, but in our
opinion the better rule seems to be that where the subse-
quent words or publication impute the same crime, or

may fairly be considered as a renewal of the original charge, they may be given in evidence as tending to show express malice, and to enhance the damages (*Leonard* v. *Pope*, 27 Mich. 145); but that evidence cannot be given of actionable words spoken or published on another occasion, and charging a separate and distinct crime from that charged in the complaint, for the purpose of showing malice, or for any other purpose, for the reason as stated by PARKER, C. J., that "This is a different calumy for which the plaintiff has a right to his action, and though it may tend to prove malice as to the first words, so, also, will it necessarily go to enhance the damages, for no jury can say how much or how little of the damages were given on account of this second charge: *Bodwell* v. *Swan*, 3 Pick. 376. To the same effect are *Root* v. *Lowndes*, 6 Hill, 518 (41 Am. Dec. 762); *Howard* v. *Sexton*, 4 N. Y. 157; *Frazier* v. *McClosky*, 60 N. Y. 337 (19 Am. Rep. 198); *Distin* v. *Rose*, 69 N. Y. 122; *Barr* v. *Hack*, 46 Iowa, 308. This is recognized as the better rule by Mr. Townshend in his work on Libel and Slander, § 392; and in a note to Odgers on Libel and Slander, at page 271, Mr. Bigelow, a writer of recognized learning and ability, after a careful review of the authorities in this country, reaches the conclusion that " By the better authorities evidence of the publication of defamation upon the plaintiff other in substance than that sued for is not admissible on grounds of policy." The distinction between the admissibility as evidence of charges of a nature different from those in suit, and the repetition of the charges made in the complaint, seems to be put upon the ground that a repetition of the libel or slander and the original offense may be practically treated as one wrong, and as to the repetitions used in evidence, all barred by the one judgment (*Leonard* v. *Pope*, 27 Mich. 145, *Root* v. *Lowndes*, 6 Hill, 518, and *Frazier* v. *McCloskey*, 60 N. Y. 337), which obviously could not be true of the publication of a different charge. The repeti-

tions made use of in evidence in a particular trial are treated as barred by the judgment, because the jury are presumed to have considered them in estimating the damages for the original publication. If, however, charges of a different nature are admitted in evidence for the purpose of showing animus,—and they certainly could not be competent for any other purpose,—the jury may indeed be instructed that they must not give damages therefor, yet, as has been remarked, such instruction will be wasted upon the average, and perhaps upon a highly cultivated, jury: *Root* v. *Lowndes*, 6 Hill 518. For this reason it is thought best to hold "that such evidence is not admissible for any purpose." The subsequent defamation given in evidence in this case, if true, was a distinct calumny, for which the plaintiff had a right of action, and, indeed, such action was pending at the time it was given in evidence, and hence we think its admission was error.

5. The next assignment of error is in the instruction to the jury that if the plea of the truth of the charge in justification is not sustained by the evidence, "the jury may consider that as a repetition and re-publication of the original charge, and consider the same in aggravation in assessing the damages, and as evidence of malice on the part of defendant against the plaintiff." It was formerly the law that if the defendant in a libel suit pleaded the truth in justification, and failed to establish such plea, it was considered as evidence of malice, and in aggravation of the injury, and he was precluded from asking any mitigation of damages even if the plea was made in good faith and with an honest belief that it was true: *Bush* v. *Prosser*, 11 N. Y. 366. But section 91 of the Code of this state, which provides that the defendant in his answer may allege both the truth of the matter charged, and "any mitigating circumstances to reduce the damages, and, whether he proves the justification or not, he may give in evidence the mitigating circumstances," has changed the

rule, and under this section the damages are not neces-
sarily affected by a failure to make good a plea of justifi-
cation.   It will depend upon the motive with which the
plea was interposed, and the good faith of the defendant.
If, under the color of justification, the defendant seeks to
reiterate and perpetuate his slander, it may be considered
by the jury as evidence of malice, and in aggravation of
damages; but where the plea is made in good faith, and
all that can be said is that he has failed to fully support
it by competent proof, we do not see the justice of apply-
ing a rule to him not applicable to the other litigants who
happen to fail in a *bona fide* defense.   The result of the
decisions of the state of New York, under a statute like
ours, is that the mere inability to establish a justification
is no evidence at all of malice, or in aggravation of dam-
ages, nor will it preclude the defense from asking that the
damages be mitigated where it appears that he was free
from malice, and had good reason to believe the libel that
he published to be true:  *Bush* v. *Prosser,* 11 N. Y. 366;
*Bisby* v. *Shaw,* 12 N. Y. 67; *Klink* v. *Colby,* 46 N. Y. (7
Am. Rep. 360); *Distin* v. *Rose,* 69 N. Y. 122; *Spooner* v.
*Keeler,* 51 N. Y. 524.   In *Distin* v. *Rose,* CHURCH, C. J.,
says:  "The Code has made this change in the law as it
previously stood, that, although the justification is not
sustained, yet the facts adduced for that purpose may be
used in mitigation of damages if they tend to show good
faith or a belief in the truth of the words uttered.   But
when there is a total failure of proof tending in this direc-
tion, and the circumstances evince malice in reiterating
the slander in the pleadings, it is allowable for the jury
to take the circumstances into consideration:   *Thorn* v.
*Knapp,* 42 N. Y. 474 and cases cited (1 Am. Rep. 561)."

Indeed, the rule of the common law has been deemed
so harsh and unjust that it has been modified in this coun-
try so that an approved plea of the truth is probably at
the present day nowhere held to be necessarily evidence

of malice, but the question now turns upon the circumstances of the plea: Odgers on Slander and Libel, § 274, note, where the authorities are collated; *Sloan* v. *Petrie*, 15 Ill. 425; *Harbison* v. *Shook*, 41 Ill. 141; *Hawver* v. *Hawver*, 78 Ill. 412; *Pallet* v. *Sargent*, 36 N. H. 496; *Proctor* v. *Houghtaling*, 37 Mich. 40; *Ransone* v. *Christian*, 49 Ga. 491; *Henderson* v. *Fox*, 83 Ga. 233 (9 S. E. 839); *Ward* v. *Dick*, 47 Conn. 300 (36 Am. Rep. 57). Now in this case the defendant gave evidence tending to support the plea of justification. Indeed, it was substantially admitted on the trial that the plaintiff did make an affidavit in proof of the publication of the summons in the divorce case of *Moore* v. *Moore*, which was untrue, his explanation being that it was made by mistake. Upon the other plea, that he committed perjury in the case of the *State* v. *Madden*, no evidence as to its truth was offered by the defendant, but he gave evidence tending to show that it was made in good faith, and with an honest belief at the time that it was true and could be sustained by the proof. It was therefore error to instruct the jury unqualifiedly that if the defendant failed to sustain the plea of justification they might consider it in aggravation of damages. It should have been left to the jury to decide from the evidence and the manner and spirit with which the defense was conducted, whether the real object of the plea was to defend the action with a reasonable expectation of success, or to repeat the original slander. It follows that the judgment of the court below must be reversed and a new trial ordered. REVERSED.