Smith v. Burrus.

SMITH, *Appellant*, v. BURRUS.*

DIVISION ONE.

1. **Appellate Practice**: SUFFICIENCY OF PETITION: JURISDICTION. Whether the petition states a cause of action or the court has jurisdiction of the subject-matter of the suit, may be raised for the first time in the appellate court.

2. **Malicious Prosecution**: CAUSE OF ACTION. An action for malicious prosecution can be maintained where the original action was begun by civil summons, unaccompanied by the arrest of the defendant therein, or the seizure of his property. (*Affirming Brady v. Ervin*, 48 Mo. 533.)

3. ———: MALICE. The voluntary dismissal of a civil suit by the plaintiff does not, in a subsequent suit against him for malicious prosecution, constitute *prima facie* evidence of malice.

4. ———: MALICE: WANT OF PROBABLE CAUSE: PRACTICE. In an action for malicious prosecution the inference of malice from want of probable cause is not a necessary one, but malice may be inferred from the want of probable cause, and from the voluntary dismissal of the alleged malicious suit, such inference being one of fact and for the jury, under proper instructions.

5. ———: PREPONDERANCE OF EVIDENCE. The plaintiff, in a suit for malicious prosecution, founded on the voluntary dismissal of an action for slander, is required to establish the truth of the slanderous words, if in issue only by the preponderance of the evidence.

6. **Slander**: CANDIDATE FOR OFFICE: PRIVILEGE. False statements defamatory of the character of a candidate for public office, though made in good faith, are not privileged.

*Appeal from the Marion Circuit Court.*—HON. THOS. H. BACON, Judge.

REVERSED AND REMANDED.

* This case was tried in the lower court before the decision in *Edwards v. Geo. Knapp & Co.*, 97 Mo. 432, was rendered.—REPORTER.]

Smith v. Burrus.

*Harrison & Mahan* and *S. W. Birch* for appellant.

(1) Defendant's amended answer is insufficient, and the court erred in admitting any evidence in behalf of defendant. It does not contain a defense, besides it conjoins a demurrer with an answer. Plaintiff's motion to strike out should have been sustained. *Long v. Lowe*, 41 Mo. 398; *Darreth v. Donnelly*, 38 Mo. 492; *Smith v. Culligan*, 74 Mo. 387. (2) Instruction, numbered 1, asked by plaintiff, should have been given. Defendant's answer admits that he voluntarily dismissed the suit for slander against plaintiff Smith. The voluntary discontinuance of his suit against plaintiff Smith is *prima facie* evidence of the malice of defendant Burrus. *Burnhans·v. Sanford*, 19 Wend. 417, and cases cited; *Garrison v. Pearce*, 3 E. D. Smith, 255. (3) The court committed error in refusing to give instruction, numbered 4, asked by plaintiff; that instruction correctly presented the law on the point involved. Cooley on Torts, p. 217; Townsend on Slander [3 Ed.] secs. 241, 247, p. 473; *Com. v. Claps*, 4 Mass. 169; *Com. v. Odell*, 3 Pitts (Pa.) 449; Odgers on Slander & Libel, sec. 236; *State v. Balch*, 31 Kan. 465; *Kimball v. Fernanda*, 41 Wis. 329; *Marks v. Baker*, 28 Minn. 162; *Barr v. Moore*, 87 Penn. St. 331; *Hunt v. Bennet*, 19 N. Y. 173. (4) The language or communication used by plaintiff Smith is privileged. "It was upon a proper occasion, from a proper motive, and made in good faith upon reasonable and probable cause." *Briggs v. Garrett*, 25 Am. Law Reg. (N. S.) 493 and note; *Printing Co. v. Copeland*, 24 Am. Law Reg. (N. S.) 640, and note; *Mott v. Dawson*, 46 Ia. 533; *Crane v. Waters*, 10 Fed. 619; Newell on Defamation, Slander & Libel, sec. 138, p. 535. (5) Smith's communication was only to the voters, and only for the purpose of giving, in good faith, what plaintiff believed to be truthful information, and only for the purpose of

Smith v. Burrus.

enabling such voters to cast ballots more intelligently. It clearly is a privileged communication. *State v. Balch,* 31 Kan. 465; *Sweeny v. Baker,* 13 W. Va. 160; *White v. Nichols,* 3 How. 266; *Brown v. Hathaway,* 95 Mass. 239; *Klinck v. Colby,* 46 N. Y. 427; Note to *Munster v. Lamb,* 23 Am. Law Reg. (N. S.) 22; *Palmer v. Concord,* 48 N. H. 211; *Mott v. Dawson,* 46 Iowa, 533; *Bays v. Hunt,* 60 Iowa, 251. (6) The court erred in giving instructions, numbered 4 and 5, asked by defendant. They require the jury to find "beyond a reasonable doubt," and that the "same evidence must be adduced by plaintiff as would be necessary to convict the defendant upon an indictment for horse stealing." This issue should be decided as in other civil cases, according to a preponderance of the evidence, and the reasonable probability of its truth. *Marshall v. Ins. Co.,* 43 Mo. 586; *Rothschilds v. Ins. Co.,* 62 Mo. 356; *Edwards v. Knapp Co.,* 97 Mo. 432.

*R. C. Cramer, J. D. Moore* and *McKee & Jayne* for respondent.

(1) Instructions 4 and 5 given for respondent were proper. The requirement that plaintiff should sustain his slanderous charges by a preponderance of evidence was not error. *Polston v. See,* 54 Mo. 291; *Elder v. Oliver,* 30 Mo. App. 575. (2) It has been frequently ruled in this court that in civil cases proof beyond a reasonable doubt is required to warrant a recovery. *Johnson v. Quarles,* 46 Mo. 423; *Ells v. Railroad,* 51 Mo. 200; *Forrester v. Scoville,* 51 Mo. 268; *Ringo v. Richardson,* 53 Mo. 385; *Kennedy v. Kennedy,* 57 Mo. 73; *Darrier v. Darrier,* 58 Mo. 222; *Gillispie v. Stone,* 70 Mo. 505; *Green v. Cates,* 73 Mo. 115; *Forrester v. Moore,* 77 Mo. 651; *Shaw v. Shaw,* 86 Mo. 594; *Rogers v. Rogers,* 87 Mo. 257; *Bobb v. Bobb,* 89 Mo. 412; *Philpot v. Penn,* 91 Mo. 39; *Burdett v. May,* 100 Mo. 13.

SHERWOOD, P. J.—Action for malicious prosecution. Burrus brought suit against Smith for slander, alleging that the latter had charged him with stealing horses; but, after Smith had been thus put to the trouble and expense of employing counsel to defend the suit, Burrus, as he admitted in his answer, voluntarily dismissed the suit he had brought, and, when on the witness stand, testified: "I dismissed the suit voluntarily, *because I wanted to.*"

It appeared in evidence on the trial that, at the time the charges were made by Smith, Burrus was running for justice of the county court in the eastern district of Scotland county; and the charges were made by Smith, who himself lived in that district, to other voters, and that affidavits were read by others implicating Burrus as an accomplice with one Mayfield in larcenous operations in regard to horses. Mayfield shortly before the election came off was convicted and sentenced for five years to the penitentiary. There was testimony adduced at the trial, which certainly had a strong tendency to show that the charges made by Smith were not unfounded, and there was some testimony of a contrary effect.

The instructions so far as necessary will be quoted and noticed in the opinion. The jury found for the defendant; hence this appeal.

I. At the outset of the examination of the case at bar we are met by the preliminary question whether the facts stated in the petition constitute a cause of action.

This point under our civil code of procedure is always open to examination even in an appellate court, and, like the jurisdiction of the court over the subject-matter of the action, is never waived, and may be taken advantage of for the first time on appeal. R. S., sec. 2047; *Sweet v. Maupin,* 65 Mo., *loc. cit.* 72; *McIntire v. McIntire,* 80 Mo., *loc. cit.* 473; *Walker v. Bradbury,* 57 Mo. 66.

The authorities are in conflict as to whether a petition states a cause of action which merely alleges that a civil action brought and prosecuted maliciously, and without probable cause, has been terminated in favor of the defendant, many of the authorities maintaining that no cause of action exists unless such civil process be accompanied by arrest of the person or seizure of the property; and that the plaintiff in such original action in contemplation of law is sufficiently punished by the payment of costs. This view has received the sanction of Judge COOLEY. Law of Torts [2 Ed.] 217, *et seq.*, and cases cited.

But there are numerous and able decisions in opposition to this view, and it is difficult to combat the force of the reasoning they employ. It is difficult to see why the right of a plaintiff who as defendant has been sued in a civil action maliciously and without probable cause, and who has been put to great expense in consequence thereof, should be altered or at all affected merely by the incident of his property having been attached or his person seized; for in either case the damage, the expense and costs of defending a suit whether instituted by *ca. sa.* or attachment or by civil summons would be the same. And it is clear that the recovery of costs would not, under our practice, reimburse him for his attorney's fees, something which and other incidental expenses, he does recover under the English practice.

The cases on both sides of this subject have been extensively collated and exhaustively reviewed by Jno. D. Lawson in 21 Am. Law Reg. (N. S.) 281, 353, and the conclusion reached that the better doctrine is that which allows an action to be maintained as well where property, etc., has not been seized as where it has. The authorities also are well reviewed in 14 Am. & Eng. Encyclopedia of Law, Tit. Malicious Pros., p. 32, *et seq.*, and notes. Besides, this court in *Brady v. Ervin*, 48 Mo. 533, adopted the view that an action for

malicious prosecution may be maintained where the original action was begun by civil summons alone.

II.  Of its own motion the court gave instruction, numbered 1 :  "The court on plaintiff's behalf, of its own motion, instructs the jury that if they find from the evidence that, in the defendant's suit against the plaintiff, this defendant's charge of slander was false, and that said suit was instituted with malice, and that said suit was also instituted without probable cause, and that this plaintiff was damaged thereby, the jury will find for the plaintiff in an amount not exceeding the amount claimed in this plaintiff's petition.  If the jury find that this defendant's charge of slander was false, then the proof of want of probable cause being the proof of a negative may be made out by slight evidence, but malice is not to be necessarily inferred from the want of probable cause.  Malice is the intentional doing of a wrongful act without just cause or excuse [ and the jury are instructed that, under the pleadings in this case, it is admitted that defendant Burrus voluntarily instituted and voluntarily dismissed said slander suit of Burrus v. Smith, and the court further instructs the jury that such voluntary dismissal of said slander suit is in this cause *prima facie* evidence of malice on the part of defendant Burrus ]."

. Attention will now be directed to that portion of that instruction which is inclosed in brackets.

Instruction, numbered 1, asked by the plaintiff, but refused him, is to the same effect, and as to that portion of the instruction of course the plaintiff would have no right to complain.  We do not regard either instruction as asserting the law on this point.  In the Law of Torts [ 2 Ed]. p. 214–15, it is said by Judge COOLEY:  "The burden of proving that the prosecution was malicious is also upon the plaintiff.  If a want of probable cause is shown, malice may be inferred; but the deduction is not a necessary one, and the mere discontinuance of a criminal prosecution, or the acquittal of the accused, will

establish for the purposes of this suit neither malice nor want of probable cause. But, if an arrest is made in a civil suit which is afterward voluntarily discontinued, the discontinuance has been held to furnish *prima facie* evidence of a want of probable cause.''

If the discontinuance of a criminal prosecution, instituted by the defendant, and discontinued at his instance, be evidence which establishes neither malice nor want of probable cause, it is difficult to see how the voluntary discontinuance of a civil action instituted by defendant can cut a wider swath. *Prima facie* evidence of a fact, said Mr. Justice STORY, "is such evidence as in *judgment of* law is sufficient to establish the fact, and if not rebutted remains sufficient for the purpose." *Lilienthal's Tobacco v. United States*, 97 U. S., *loc. cit.* 268, and cases cited. The portion of the instruction heretofore referred to, therefore, in effect told the jury that the voluntary dismissal of the civil action begun by defendant made out a case for the plaintiff without more ; but this was not the law. The instructions, therefore, referred to were tantamount to saying that the mere discontinuance of the action for slander was sufficient in and of itself, to make out a case of malice on his part ; but as already seen this is not the law. As Judge COOLEY says, the deduction of malice from a want of probable cause is not a necessary one. Of course, malice may be inferred from the want of probable cause, and from the voluntary dismissal of the original civil action ; but such inference is one of fact, and one for the jury, under appropriate instructions, to draw.

III. In regard to the words used by plaintiff which gave origin to the suit for slander, the court instructed the jury that : "And, to warrant the jury in finding that the said alleged language was true, the same evidence must be adduced by plaintiff as would be necessary to convict the defendant upon indictment for horse-stealing, and if the jury believe from the evidence that plaintiff uttered the said words, of and concerning

defendant and entertain a reasonable doubt of defendant's guilt of the crime imputed to him in said words, the jury should find a verdict for defendant. By a reasonable doubt, is meant a substantial doubt, based on and arising from the evidence, and not a mere possibility of defendant's innocence."

This view of the law, though sustained by the case of *Polston v. See*, 54 Mo. 291, by a divided court, was unanimously overthrown in the case of *Edwards v. Geo. Knapp & Co.*, 97 Mo. 432; and the now generally prevalent modern doctrine established that in all civil actions a preponderance of the evidence is sufficient to make out a case for either litigant.

Besides, in actions of this sort, such an instruction is wholly out of place; whether a party is suing or sued for malicious prosecution, the absolute guilt of the particular individual is not at all a controlling issue; absence of malice and probable cause are the governing factors and constituent elements of the forensic contest.

The remaining point to be discussed is, whether the court should have given instruction, numbered 4, asked by plaintiff but refused by the court, which was the following: "If the jury believe from the evidence that defendant Burrus was a candidate for the public office of county judge in and for the eastern district of Scotland county, Missouri, at the general election of the year 1884, and if the jury further believe, from the evidence, that the character, honesty and fitness of said Burrus to fill such public office was relevant to the candidacy of said Burrus and necessary to be known by the voters and constituents of said Burrus at said general election for their own interest and protection, and if the jury further find, from the evidence, that the language shown by the testimony in this case to have been used by Smith about Burrus was so used by said Smith to some of the voters and constituents of said Burrus, at said general election, and to none other, in a private, oral discussion of the character and honesty and fitness

of said Burrus to fill such public office, and that said language was so used in good faith for the purpose of giving such voters and constituents relevant and proper information for their own interest and protection, and, that said language was so used by said Smith, in said eastern district of Scotland county, after said Burrus had been nominated for said public office, and before said general election in said eastern district, and that said Smith was a voter at said general election in said eastern district, then the court instructs the jury that such language so used by said Smith is privileged; that said Smith had the right to so use the same; and that defendant Burrus did not have reasonable and probable cause for bringing said suit for slander against plaintiff Smith."

There is a conflict of authority on the question whether such an instruction should be given in instances like the present; but as this case is one of the first impression in this state we are free to adopt that rule which we regard as best comporting with the proper preservation of the rights of individuals, good government, social order, justice and sound reason. The correct rule, we take it, is that expressed by the supreme court of Massachusetts in *Com. v. Claps*, 4 Mass. 163, where Chief Justice PARSONS, speaking for the court, said: "When any man shall consent to be a candidate for a public office conferred by the election of the people, he must be considered as putting his character in issue, so far as it may respect his fitness and qualifications for the office; and publications of the truth on this subject, with the honest intention of informing the people, are not a libel; for it would be unreasonable to conclude that the publication of truths, which it is the interest of the people to know, should be an offense against the law. For the same reason the publication of falsehood and calumny against public officers or candidates for public offices is an offense most dangerous to the people, and deserves punishment, because the

Smith v. Burrus.

people may be deceived, and reject the best citizens to their great injury, and it may be to the loss of their liberties."

This expression of the law was cited approvingly in *Wheaton v. Beecher*, 33 N. W. Rep. (Mich.) 503, an action for libel, with plea of privileged communication regarding a candidate for a public office, and SHER-WOOD, J., in delivering the opinion of the court, said: "The libel in this case was not privileged. It is true the plaintiff was a candidate for appointment to the office of comptroller of the city of Detroit'; but this did not license the defendant, or any other person, to vilify, falsify and calumniate the character of the plaintiff for honesty, integrity and morality. There is no doubt that when a man in this country becomes a candidate for an office, elective or appointive, his character for honesty and integrity, and his qualifications and fitness for the position, are put before the people, and are thereby made proper subjects for comment, and that publications of the truth in regard to the candidate are not libelous; and it is equally true that the publication of falsehood against such candidate is wrong, and deserves to be punished."

*Bronson v. Bruce*, 59 Mich. 467, was also an action for libel on a candidate for a public office, and the claim of privilege was also interposed, but CHAMPLIN, J., as the organ of the court, said: "The electors of a congressional district are interested in knowing the *truth*, not falsehoods, concerning the qualifications and character of one who offers to represent them in congress; and it is the right and privilege of any elector, or person also having an interest to be represented, to freely criticise the act and conduct of such candidate, and show, if he can, why such person is unfit to be intrusted with the office, or why the suffrages of the electors should not be cast for him. But defamation is not a necessary and indispensable concomitant of an election contest." " To hold that false charges of a

defamatory character, made against a candidate, are privileged as matters of law, if made in good faith, and that the party making them is absolutely shielded against liability, it seems to me, is a most pernicious doctrine. It would deter all sensitive and honorable men from accepting the candidacy to office, and leave the field to the profligate, the unprincipled and unworthy; to men who have no character to lose, no reputation to blemish. It could scarcely be expected that any man, worthy of the position, would consent to stand for an office, and have his reputation tarnished, his good name scandalized in the face of the whole community, if such doctrine as this is to prevail. Besides, under the guise of assisting the people to select a fit man, the voters are deceived by falsehood and induced to withhold their support from the maligned candidate, and so two wrongs are perpetrated; one upon the candidate, the other in misleading the voter."

At an early day in Tennessee, the same question arose, and a similar ruling was made, OVERTON, J., remarking: "Slander is no more justifiable when spoken of a man with a view to his election than on any other occasion. Unhappy, indeed, would any people be, where, in the exercise of one right, you destroy as important a one." "Let his talents, his virtues, and such vices as are likely to affect his public character, be freely discussed, but no falsehoods be propagated." *Brewer v. Weakley,* 2 Overt. 99.

The same view of the law prevails in West Virginia, where GREEN, President, delivering the opinion of the court, in speaking of the degree of freedom with which the character of a candidate for public office may be treated, said: "As this right of criticism is confined to the acts or conduct of such candidate, whenever the facts which constitute the act or conduct criticised are not admitted, they must of course be proven. * * * His talents and qualifications, mentally and physically, for the office he asks at the hands of the people, may

freely be commented on in publications in a newspaper, and, though such comments be harsh and unjust, no malice will be implied ; for these are matters of opinion of which the voters are the only judges; but no one has a right by a publication to impute to such candidate, falsely, crimes, or publish allegations affecting his character, falsely." *Sweeney v. Baker*, 13 W. Va. 183.

The same rule prevails as to the conduct of a public officer as that relating to a candidate for office, as the authorities show, and in regard to what are privileged communications respecting the former class, FOLGER, C. J., said: "We are of the opinion that the official act of a public functionary may be freely criticised, and entire freedom of expression used in argument, sarcasm and ridicule upon the act itself; and that then the occasion will excuse everything but actual malice and evil purpose in the critic. We are of the opinion that the occasion will not of itself excuse an aspersive attack upon the character and motives of the officer; and that to be excused the critic must show the truth of what he has uttered of that kind." *Hamilton v. Eno*, 81 N. Y. 126.

The doctrine here asserted is also prevalent in Illinois. In *Rearick v. Wilcox*, 81 Ill. 77, CRAIG, J., said: "While the qualification and fitness of a candidate for office might properly be discussed with freedom by the press of the country, we are aware of no case that goes so far as to hold that the private character of a person who is a candidate for office can be destroyed by the publication of a libelous article in a newspaper, notwithstanding the election may be attended with that excitement and feeling that not unfrequently enters into our elections. * * * The law required appellee, as the publisher of a journal, to publish facts, and not libelous articles. The character and reputation of appellant was as sacred, and as much entitled to protection, when a candidate for office, as at any other time."

The same doctrine is announced in other states, and we regard it as the better one, especially in this day and age when in heated political campaigns the "rattling tongue of noisy and audacious" slander, and what Lord MANSFIELD in *Rex v. Wilkes*, 4 Burr. 2562, calls "that *mendax infamia* from the press," sorely need to have placed upon them some fetter, some check, some curb, which shall be able in some degree at least to restrain them within something like legitimate boundaries, and something like a decent regard for private character. Within these bounds of legitimate discussion all that is necessary to say and proper to say respecting the actions and qualifications of candidates or public officers, may legitimately be said, without descending into the sinks and cess-pools of vituperation.

For the errors aforesaid, the judgment should be reversed and the cause remanded. All concur, except BARCLAY, J., absent.